Liza M. Walsh
Christine I. Gannon
**WALSH PIZZI O'REILLY FALANGA LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
(973) 757-1100

*Attorneys for Plaintiffs Endovalve Inc. and Micro
Interventional Devices, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Endovalve Inc. and Micro Interventional Devices, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Neovasc Inc., f/k/a PM Devices Inc., and Neovasc Tiara Inc., <br><br> Defendants. | Civil Action No. _____ |

## COMPLAINT

     Endovalve Inc. ("Endovalve") and Micro Interventional Devices ("MID") (collectively "Plaintiffs"), by their undersigned attorneys Goodwin Procter LLP and Walsh Pizzi O'Reilly Falanga LLP, for this Complaint against Defendants Neovasc Inc. ("Neovasc") and Neovasc Tiara Inc. ("Neovasc Tiara,") (collectively "Defendants"), hereby allege as follows:

## SUMMARY OF THE ACTION

1.     This is an action for damages and injunctive relief to redress Defendants' breach of contract, misappropriation of Plaintiffs' confidential information and trade secrets, and unfair competition.

## PARTIES

2.      Endovalve is a corporation organized and existing under the laws of Delaware which had, for all relevant time periods in this complaint, its principal place of business in Princeton, New Jersey, but which now has its principal place of business in Newton, Pennsylvania.  Endovalve is a wholly owned subsidiary of MID.

3.      MID is a corporation organized and existing under the laws of Delaware which has its principal place of business in Newton, Pennsylvania.

4.      On information and belief, Neovasc (formerly known as PM Devices Inc.) is, and at all times herein mentioned was, a corporation organized and existing under the laws of Canada with its principal place of business in Richmond, British Columbia, Canada.

5.      On information and belief, Neovasc Tiara is a corporation organized in March 2013 and existing under the laws of Canada with its principal place of business in Richmond, British Columbia, Canada.  Neovasc Tiara is a wholly owned subsidiary of Neovasc.

6.      Upon information and belief, Neovasc conducts a substantial portion of its business in the United States, several of its largest customers are located in the United States, and it conducts a significant portion of that business in New Jersey.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under 28 U.S.C. § 1332(a)(2), because this action is between a citizen of this State and a citizen of a foreign state, and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

8.      This court has personal jurisdiction over Defendants by virtue of their systematic and continuous contacts with New Jersey and by their actions in New Jersey giving rise to the claims asserted in this Complaint.

9.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

10.     Endovalve was founded in June of 2005 in Princeton, New Jersey, by Dr. Howard Hermann, a Professor of Medicine at the University of Pennsylvania's ("Penn") School of Medicine and the Director of the Interventional Cardiology and Cardiac Catheterization Laboratory of the Hospital of the University of Pennsylvania Medical Center.

11.     Endovalve pioneered the development of transcatheter mitral valve replacement ("TMVR") system technology for the treatment of mitral regurgitation. The Endovalve system is designed to replace a damaged mitral valve without open-heart surgery so that patients do not have to wait until they have a serious cardiac event or until the disease becomes critical before they are treated.

12.     Research and development work by Dr. Herrmann and his team at Penn on Endovalve's percutaneous mitral valve replacement technology began in early 2003 at the university, focusing initially on tissue engagement designs and procedures for effective anchoring of mitral valves. Later, Endovalve, working with Dr. Herrmann and his team, and other physicians and scientists at Penn pursuant to a Sponsored Research Agreement entered into between Endovalve and Penn in November of 2007, focused on mitral valve skirt designs and procedures for improved valve sealing for use in combination with the Hermann team's tissue engagement designs and procedures for anchoring.

13.     In 2008, Endovalve and Neovasc entered into preliminary discussions concerning Neovasc's ability to manufacture mitral valves incorporating Endovalve's technology.

14.     Pursuant to those discussions, on April 7, 2008, the companies entered into a Non-Disclosure Agreement ("NDA"; attached as Exhibit A) with a term commencing on the date of the agreement and continuing for a period of 5 years after the conclusion of their business relationship.

15.     Under the terms of the April 7, 2008 NDA, Neovasc agreed to (a) "receive and hold all [of Endovalve's] Confidential Information in strict confidence and disclose such Confidential Information only to its employees and representatives who have agreed in writing to be bound by the terms of this [NDA] and who need to know the Confidential Information for the purpose of evaluating the proposed business relationship," (b) to "not, directly or indirectly, disclose or use Confidential Information, in whole or in part, for any purpose other than evaluating the proposed business relationship," and (c) to "not, directly or indirectly, disclose any Confidential Information to any third party or use the Confidential Information for its own benefit or for the benefit of any third party." The agreement specifically identifies information relating to Endovalve's percutaneous and minimally invasive surgery implantable mitral valve replacement system as Confidential Information.

16.     Beginning in April, 2008, from its New Jersey facilities, Endovalve disclosed to Neovasc various aspects of Endovalve's confidential and proprietary technology in accordance with the terms, and under the protection, of the NDA. Endovalve's confidential disclosures to Neovasc included proprietary designs, specifications, frames, and other components of mitral valves – including TMVR anchoring and skirt technology – developed by Endovalve and subject to the NDA between the companies incorporating Endovalve's proprietary technology. Those inventions were embodied in at least some of the frames that Endovalve shipped from New Jersey to Neovasc.

17.     MID acquired Endovalve in April, 2011.

18.     Over the course of their collaboration, Neovasc assembled heart valves under Plaintiffs' guidance and direction and in accordance with Endovalve's technology, trade secrets, and know-how pursuant to the parties' written agreement, and under the confidentiality restrictions of the NDA.

19.     On information and belief, after Neovasc had entered into the NDA with Endovalve and had received Endovalve's confidential information concerning its TMVR system, Neovasc began development of its own TMVR system, which it has branded as Tiara.

20.     On information and belief, the Neovasc TMVR system incorporates proprietary Endovalve technology and know-how without authorization and in breach of the NDA.

21.     On information and belief, in March 2013, Neovasc created Neovasc Tiara for the purpose of developing and owning intellectual property relating to TMVR technology.

22.     On information and belief, Neovasc Tiara's TMVR technology incorporates Plaintiffs' proprietary technology and know-how without authorization and in breach of the NDA.

23.     At no point during the relationship between Plaintiffs and Neovasc did Neovasc ever state or suggest to Plaintiffs that Neovasc was itself in the business of designing and developing transcatheter mitral valves in competition with Plaintiffs or that Neovasc intended to enter that business.

24.     Less than three years ago, Plaintiffs became aware that Neovasc and Neovasc's Tiara valves include the proprietary Endovalve TMVR technology developed by Endovalve and subject to the NDA between the companies.

## COUNT I

### BREACH OF CONTRACT

#### Against Neovasc

25.     Plaintiffs re-allege and incorporate by reference Paragraphs 1-24.

26.     The NDA constitutes a valid and enforceable contract.

27.     Plaintiffs have performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the NDA.

28.     Beginning about mid-2009, Neovasc breached the NDA by, among other things, using Plaintiffs' confidential and proprietary technology in developing Neovasc's Tiara product, and by disclosing Plaintiffs' confidential and proprietary technology to Neovasc Tiara and to third parties.

29.     As a result of Neovasc's breach of the NDA, Plaintiffs have suffered damages, with the specific amount subject to further evaluation and calculation, but, in any event, in excess of $75,000, exclusive of interest and costs.

## COUNT II

### COMMON LAW MISAPPROPRIATION OF TRADE SECRETS

#### Against Defendants

30.     Plaintiffs re-allege and incorporate by reference Paragraphs 1-29.

31.     This cause of action for misappropriation of trade secrets arises under New Jersey common law.

32.     Plaintiffs own and possess certain confidential, proprietary, and trade secret information, as alleged above.

33.     Plaintiffs have taken reasonable precautions to keep its confidential, proprietary, and trade secret information secret. These efforts include, but are not limited to, requiring employees and contractors to sign confidentiality agreements.

34.     Plaintiffs communicated confidential, proprietary, and trade secret information to Neovasc in confidence under a valid and enforceable non-disclosure agreement.

35.     Due to these security measures, Plaintiffs' confidential and proprietary trade secret information is not available to others in the mitral valve industry—or any industry— through any legitimate means.

36.     Plaintiffs' confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

37.     On information and belief, in violation of Plaintiffs' rights, Neovasc misappropriated Plaintiffs' confidential, proprietary, and trade secret information by relying on proprietary and trade secret data received under the NDA and used such information to compete against Plaintiffs.

38.     On information and belief, Neovasc knew or should have known under the circumstances that the information misappropriated by Neovasc constituted trade secrets.

39.     On information and belief, in violation of Plaintiffs' rights, Neovasc Tiara received Plaintiffs' confidential, proprietary, and trade secret information with knowledge that such information had been obtained improperly in violation of a valid NDA and used such information to compete against Plaintiffs.

40.     As a result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered damages, with the specific amount subject to further evaluation and calculation, but, in any event, in excess of $75,000, exclusive of interest and costs.

41.     On information and belief, Defendants' attempted and continue to attempt to conceal this misappropriation.

42.     On information and belief, if Defendants are not enjoined, Defendants will continue to use trade secret information misappropriated from Plaintiffs for their own benefit and to Plaintiffs' detriment.

43.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and, if Defendants' conduct is not stopped, Plaintiffs will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven at trial.

44.     Defendants' conduct constitutes transgressions of a continuing nature for which Plaintiffs have no adequate remedy at law. Unless and until enjoined and restrained by order of this Court, Defendants will continue to retain and use Plaintiffs' trade secret information to enrich themselves and divert business from Plaintiffs.

45.     In addition to damages, Plaintiffs therefore seek preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information, and to protect other legitimate business interests. Plaintiffs' business operates in a small and competitive market and will continue to suffer irreparable harm absent injunctive relief.

## COUNT II

### VIOLATION OF THE NEW JERSEY TRADE SECRETS ACT

#### Against Defendants

46.     Plaintiffs re-allege and incorporate by reference Paragraphs 1-45.

8

47.     This cause of action for misappropriation of trade secrets arises under N.J.S.A. 56:15-1 *et seq*.

48.     Plaintiffs own and possess certain confidential, proprietary, and trade secret information, as alleged above.

49.     Plaintiffs have taken reasonable precautions to keep its confidential, proprietary, and trade secret information secret. These efforts include, but are not limited to, requiring employees and contractors to sign confidentiality agreements.

50.     Plaintiffs communicated confidential, proprietary, and trade secret information to Neovasc in confidence under a valid and enforceable non-disclosure agreement.

51.     Due to these security measures, Plaintiffs' confidential and proprietary trade secret information is not available to others in the mitral valve industry—or any industry—through any legitimate means.

52.     Plaintiffs' confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

53.     On information and belief, in violation of Plaintiffs' rights, Neovasc misappropriated Plaintiffs' confidential, proprietary, and trade secret information by relying on proprietary and trade secret data received under the NDA and used such information to compete against Plaintiffs.

54.     On information and belief, Neovasc knew or should have known under the circumstances that the information misappropriated by Neovasc constituted trade secrets.

55.     On information and belief, Neovasc's misappropriation continued after January 5, 2012.

56.     On information and belief, in violation of Plaintiffs' rights, Neovasc Tiara received Plaintiffs' confidential, proprietary, and trade secret information with knowledge that such information had been obtained improperly in violation of a valid NDA and used such information to compete against Plaintiffs.

57.     As a result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered damages, with the specific amount subject to further evaluation and calculation, but, in any event, in excess of $75,000, exclusive of interest and costs.

58.     On information and belief, Defendants' attempted and continue to attempt to conceal this misappropriation.

59.     On information and belief, if Defendants are not enjoined, Defendants will continue to use trade secret information misappropriated from Plaintiffs for their own benefit and to Plaintiffs' detriment.

60.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and, if Defendants' conduct is not stopped, Plaintiffs will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven at trial.

61.     Defendants' conduct constitutes transgressions of a continuing nature for which Plaintiffs have no adequate remedy at law. Unless and until enjoined and restrained by order of this Court, Defendants will continue to retain and use Plaintiffs' trade secret information to enrich themselves and divert business from Plaintiffs.

62.     In addition to damages, Plaintiffs therefore seek preliminary and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret

information, and to protect other legitimate business interests. Plaintiffs' business operates in a small and competitive market and will continue to suffer irreparable harm absent injunctive relief.

63.     Defendants' conduct in misappropriating Plaintiffs' confidential, proprietary, and trade secret information was willful and malicious.  Therefore, pursuant to N.J.S.A. 56:15-6 and related law, Plaintiffs are entitled to an award of attorneys' fees for Neovasc's misappropriation of trade secrets.

<u>COUNT III</u>

**VIOLATION OF THE NEW JERSEY UNFAIR COMPETITION LAW**

**Against Defendants**

64.     Plaintiffs re-allege and incorporate by reference Paragraphs 1-63.

65.     This cause of action for unfair competition arises under N.J.S.A. 56:4-1 *et seq.* and N.J.S.A. 56:4A-1 *et seq.*

66.     Defendants' misappropriation of Plaintiffs' trade secrets and continued use of Plaintiffs' trade secrets constitutes unfair competition. As a result of such improper exploitation of Plaintiffs' proprietary technology, Defendants gain an unfair advantage in competition against Plaintiffs.

67.     As a result of Defendants' misleading, deceptive, and wrongful business practices, Plaintiffs have and are likely to continue to suffer damages and irreparable injury by the diversion of sales from Plaintiffs to Defendants and by the decrease in the goodwill and reputation Plaintiffs' products enjoy in the market.

68.     As a result of Neovasc's unfair competition, Plaintiffs have suffered damages, with the specific amount subject to further evaluation and calculation, but, in any event, in excess of $75,000, exclusive of interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to enter Judgment in its favor, and against Defendants, and to enter an Order:

a)     adjudging that Neovasc breached the NDA with Endovalve;

b)     adjudging that Neovasc misappropriated Plaintiffs' trade secrets;

c)     adjudging that Defendants have engaged in unfair competition with respect to Plaintiffs;

d)     preliminarily and permanently enjoining Defendants from using Plaintiffs' trade secrets;

e)     requiring Defendants to account to Plaintiffs for any and all profits derived by Defendants and all damages sustained by Plaintiffs by virtue of Defendants' acts complained of herein;

f)     requiring Defendants to disgorge any and all profits improperly derived by Defendants by virtue of Defendants' acts complained of herein;

g)     awarding Plaintiffs all damages that Plaintiffs have sustained as a consequence of the acts complained of herein, subject to proof at trial;

h)     awarding Plaintiffs reasonable costs, expenses, and attorneys' fees; and

i)     awarding Plaintiffs such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims for relief so triable.

Dated: September 7, 2018

Respectfully submitted,

s/*Liza M. Walsh*

Liza M. Walsh
Christine I. Gannon
**WALSH PIZZI O'REILLY FALANGA LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*

Elizabeth J. Holland *(pro hac vice motion to be filed)*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
eholland@goodwinlaw.com

Emily L. Rapalino *(pro hac vice motion to be filed)*
Robert D. Carroll *(pro hac vice motion to be filed)*
Todd Marabella *(pro hac vice motion to be filed)*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000
Fax.: +1 617 523 1231
erapalino@goodwinlaw.com
rcarroll@goodwinlaw.com
tmarabella@goodwinlaw.com

*Attorneys for Plaintiffs Endovalve Inc. and Micro Interventional Devices, Inc.*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2 AND 401

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiffs that should be joined to this action.

Dated: September 7, 2018                      Respectfully submitted,

s/*Liza M. Walsh*
Liza M. Walsh
Christine I. Gannon
**WALSH PIZZI O'REILLY FALANGA LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Elizabeth J. Holland *(pro hac vice motion to be filed)*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
eholland@goodwinlaw.com

Emily L. Rapalino *(pro hac vice motion to be filed)*
Robert D. Carroll *(pro hac vice motion to be filed)*
Todd Marabella *(pro hac vice motion to be filed)*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000
Fax.: +1 617 523 1231
erapalino@goodwinlaw.com
rcarroll@goodwinlaw.com
tmarabella@goodwinlaw.com

*Attorneys for Plaintiffs Endovalve Inc. and Micro Interventional Devices, Inc.*

14

## <u>RULE 201.1 CERTIFICATION</u>

Pursuant to District of New Jersey Local Rule 201.1, and to the best of my knowledge, the undersigned certifies that the within matter is not arbitrable being that the relief sought does not consist "only of money damages not in excess of $150,000 exclusive of interest and costs and any claim for punitive damages."

Dated: September 7, 2018                         Respectfully submitted,

s/*Liza M. Walsh*
Liza M. Walsh
Christine I. Gannon
**WALSH PIZZI O'REILLY FALANGA LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Elizabeth J. Holland *(pro hac vice motion to be filed)*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
eholland@goodwinlaw.com

Emily L. Rapalino *(pro hac vice motion to be filed)*
Robert D. Carroll *(pro hac vice motion to be filed)*
Todd Marabella *(pro hac vice motion to be filed)*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000
Fax.: +1 617 523 1231
erapalino@goodwinlaw.com
rcarroll@goodwinlaw.com
tmarabella@goodwinlaw.com

*Attorneys for Plaintiffs Endovalve Inc. and Micro Interventional Devices, Inc.*