# EXHIBIT A



2008 APRIL 7

## NON-DISCLOSURE AGREEMENT

This Agreement is made this *7th Day of April, 2008*, by and between **PM Devices Inc**., 2135 – 13700 Mayfield Place, Richmond, British Columbia, Canada, V6V 2E4 and **Endovalve, Inc.,** 103 Carnegie Center, Suite 100, Princeton, NJ 08540, 908-901-0691.

WHEREAS, PM Devices Inc. and **ENDOVALVE, INC.**, desire to enter into preliminary discussions which may lead to a business relationship between the parties; and

WHEREAS, in the course of such discussions it may be necessary for the parties to disclose certain information which they deem to be confidential; and

WHEREAS, the parties (the party disclosing the Confidential Information and the party receiving the same are referred to as "Discloser" and "Recipient" respectively) want to protect such information from unauthorized disclosure.

NOW, THEREFORE, the parties agree as follows:

1.     The term "Confidential Information" shall mean any oral or written information received from the Discloser which is not generally known to the public, including but not limited to, information relating to **Endovalve Inc's percutaneous and minimally invasive surgery implantable mitral valve replacement system**. Confidential Information includes, by way of example and not limitation, information of a technical nature such as trade secrets; manufacturing processes or devices; current products or products under development; research subjects, methods and results; matters of a business nature such as information about cost, margins, pricing policies, markets, sales, suppliers and customers; product, marketing or strategic plans; financial information; personnel records and other information of a similar nature.

2.     Recipient shall receive and hold all Confidential Information in strict confidence and disclose such Confidential information only to its employees and representatives who have agreed in writing to be bound by the terms of this Agreement and who need to know the Confidential Information for the purpose of evaluating the proposed business relationship referred to above.  Without affecting the generality of the forgoing, Recipient will exercise no less care to safeguard the Confidential Information than Recipient exercises in safeguarding its own Confidential Information and will be responsible for any breach of this Agreement by its employees and representatives

3.     Recipient shall not, directly or indirectly, disclose or use Confidential Information, in whole or in part, for any purpose other than evaluating the proposed business relationship referred to above.  Without affecting the generality of the foregoing, Recipient shall not, directly or indirectly, disclose any Confidential Information to any third party or use the Confidential Information for its own benefit or for the benefit of any third party.

4.     The forgoing restrictions on Recipient's disclosure and use of Confidential Information shall not apply to the extent that such information: (i) was already known to Recipient prior to receipt from Discloser; (ii) is or becomes public knowledge without breach of Recipients obligations hereunder; (iii) is rightfully acquired by Recipient from a third party without restriction on disclosure or use; (iv) was disclosed by Discloser to a third party without restriction on disclosure or use; (v) is independently developed by Recipient without resort to Disclosers disclosure; or (vi) is disclosed or used following Recipients receipt of express written consent from an authorised offer of Discloser.  Provided, however, that Recipient shall have the burden of proof respecting any of the aforementioned events on which Recipient relies as relieving it of any restrictions hereunder, and provided further, that in the case of (ii), (iii), (iv), (v), (vi) above, the removal of restrictions shall be effective only as of the date of occurrence of the applicable event.



5.  Neither party to this Agreement shall, without prior written consent of the other party, disclose to any third party the fact that the Confidential Information has been made available, that discussion or negotiations are taking place concerning a possible business relationship between the parties, or any of the terms, conditions or other facts with respect to any such possible business relationship, including the status thereof, except as required by law and then, only with prior written notice to the other party.  Any disclosure made shall be not more extensive than is necessary to meet the minimum requirement imposed on the party making such disclosure.

6.  The furnishing of Confidential Information hereunder shall not constitute or be construed as a grant of any express or implied license or other right, or covenant not to sue or forbearance from any other right of action (except as to permitted activities hereunder), by Discloser to Recipient under any of Disclosers patent or other intellectual property rights.

7.  The term of this Agreement shall commence on the date set forth above and shall continue for a period of five years after the conclusion of the business relationship. This Agreement may be extended prior to the expiration hereof by mutual written agreement of the parties.

8  Upon Disclosers request, Recipient shall immediately return all written, graphic or other tangible forms of the Confidential Information and all copies thereof, except for one copy which may be retained for record retention purposes only and shall remain subject to the disclosure and use restriction of this Agreement.

9.  Recipient hereby understands and acknowledges that Discloser has endeavoured to include in the Confidential Information those materials which are believed to be relevant for the purpose of Recipient's evaluation.  However, neither Discloser nor any of its representatives shall have any liability to Recipient as a result of the use of the Confidential Information by the Recipient or any of its representatives, it being understood that only those specific representations and warranties which may be made in a definitive agreement with respect to the proposed business relationship when, as and if such an agreement is executed, shall have any legal effect.

10. The parties understand and acknowledges that money damages would not be sufficient remedy for any breach of this Agreement and that a party shall be entitled to equitable relief (including, but not limited to, an injunction or specific performance) in the event of any breach of the provision of this Agreement.

11. It is understood that this Agreement does not contain all matters upon which agreement must be reached in order for the proposed business relationship to be consummated and, therefore, does not in any way constitute a binding commitment between the parties with respect to the proposed business relationship.

12. In the event that the parties enter into subsequent written agreement, the terms of such agreement concerning confidentiality of information shall supersede and prevail any conflicting terms of this Agreement.

13. This Agreement shall be governed by and construed in accordance with the laws of the Province of British Columbia.  This agreement contains the entire agreement of the parties relating to the subject matter hereof and supersedes all prior or contemporaneous oral or written agreements.  This Agreement may not be amended except by mutual written agreement of the parties.

**PERFORMANCE MEDICAL DEVICES**

IN WITNESS WHEREOF, authorized representatives of the parties have executed this Agreement as of the date first above written.

| **PM Devices Inc.** | **Endovalve, Inc.** |
|---|---|
| _[signature]_ | _[signature]_ |
| Signature | Signature |
| Mark Pace-Floridia | Robert G. Wilkins |
| Name | Name |
| Sr. Engineering Manager | CEO |
| Title | Title |